IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRISTOPHER ALLISON,

       Plaintiff,

vs.                                                                               2:19-cv-01183-LF

ANDREW M. SAUL, Commissioner
of the Social Security Administration,

       Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Christopher Allison's Motion to Reverse the Administrative Law Judge['s] (ALJ) Unfavorable Decision Dated February 27, 2019 as well as the Appeals Council Ruling Dated November 4, 2019: Alternatively Motion to Remand Case Back to the Administrative Law Judge, and supporting memorandum (Docs. 18, 19), which was fully briefed on August 14, 2020. *See* Docs. 21, 22, 23. The parties consented to my entering final judgment in this case. Docs. 5, 10, 11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that Mr. Allison's motion is not well-taken, and it will be DENIED.

### I.     Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

decision stands, and the plaintiff is not entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).  The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Id.*  While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005).  "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'"  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III.   Background and Procedural History

Mr. Allison was born in 1982, graduated from high school and earned a two-year associate's degree in college. AR 38–39, 209, 260.[3] He has worked as a video rental clerk, a call center customer service representative, a cashier, a cashier supervisor, a proof operator in a bank, a school secretary, and an airport security guard. AR 24, 70–72, 260. Mr. Allison filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Document 15-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

("SSI") on July 28, 2016, alleging disability since 2008 or 2009[4] due to lower back problems, a cyst on the spine at L5-S1, arthritis in both knees, and depression.  AR 209–21, 259.  Mr. Allison later amended his alleged onset date to January 1, 2016.  AR 12, 37–38.  The Social Security Administration ("SSA") denied his claims initially on June 22, 2017.  AR 130–37.  The SSA denied his claims on reconsideration on August 29, 2017.  AR 140–47.  Mr. Allison requested a hearing before an ALJ.  AR 152–53.  On October 26, 2018, ALJ Frederick Upshall, Jr. held a hearing.  AR 32–81.  ALJ Upshall issued his unfavorable decision on February 27, 2019.  AR 9–31.

The ALJ found that Mr. Allison met the insured requirements of the Social Security Act through December 31, 2018.  AR 15.  At step one, the ALJ found that Mr. Allison had not engaged in substantial, gainful activity since January 1, 2016, his amended alleged onset date.  *Id*.  At step two, the ALJ found that Mr. Allison suffered from the following severe impairments:  "degenerative disc disease of the lumbar spine; bilateral patellofemoral chondromalacia[5]; depression (bereavement); migraine headaches; insomnia, and sacroiliitis."  *Id*.

At step three, the ALJ found that none of Mr. Allison's impairments, alone or in combination, met or medically equaled a Listing.  AR 15–17.  Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Allison's RFC.  AR 17–24.  The ALJ found Mr. Allison had the RFC to

> lift and/or carry ten pounds occasionally and less than ten pounds frequently.  The claimant can stand and/or walk for two hours in an eight-hour workday with normal

---

[4] Mr. Allison's application for DIB lists an alleged onset date of January 1, 2009, AR 209, while his application for SSI lists an alleged onset date of August 1, 2008, AR 216.

[5] Chondromalacia patellae, or patellofemoral syndrome, is a softening of the cartilage under the patella.  MSD Manual, Professional Version, available at https://www.msdmanuals.com/professional/pediatrics/connective-tissue-disorders-in-children/chondromalacia-patellae (last visited Nov. 16, 2020).

4

      breaks.  The claimant can sit for six hours in an eight-hour workday with normal breaks.  The claimant can push and/or pull ten pounds occasionally and less than ten pounds frequently.  The claimant should be allowed to sit or stand alternatively, at will.  He can occasionally climb ramps and stairs, but can never climb ladders, ropes, or scaffolds.  He can occasionally stoop, crouch, kneel, and crawl.  He is limited to simple, routine, repetitive unskilled work.  He can have only occasional interaction with the public.  This RFC is consistent with a range of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with additional limitations.

AR 17.

At step four, the ALJ found Mr. Allison unable to perform his past relevant work as a video rental clerk, customer service representative, proof machine operator, school secretary, cashier/checker, or cashier supervisor.  AR 24.  The ALJ found Mr. Allison not disabled at step five because there were jobs that exist in significant numbers in the national economy that he could perform—such as document specialist, call-out operator, and surveillance system monitor.  AR 24–25.

Mr. Allison requested review of the ALJ's unfavorable decision by the Appeals Council.  AR 204–08.  On November 4, 2019, the Appeals Council denied the request for review.  AR 1–6.  Mr. Allison timely filed his appeal to this Court on December 18, 2019.[6]  Doc. 1.

### IV.   Mr. Allison's Claims

Mr. Allison raises seven arguments for reversing and remanding this case:  (1) the ALJ found six severe impairments, which "should've been enough to warrant a conclusion of disability" (Doc. 19 at 5); (2) the ALJ failed to correctly apply the treating physician rule; (3) the ALJ erred in concluding that he did not meet a Listing for depression; (4) the ALJ erred in "determining that the record contains no evidence that [he] is unable to work" (*id*. at 13); (5) the ALJ failed to consider his severe impairments in combination; (6) the ALJ erred in determining

---

[6] A claimant has 60 days to file an appeal.  The 60 days begins running five days after the decision is mailed.  20 C.F.R. §§ 404.981, 416.981; see also AR 2–3.

5

there were a significant number of jobs in the national economy which he could perform; and (7) the Appeals Council erred by giving no reasoning in its decision. *See* Doc. 19. For the reasons explained below, none of these arguments have merit.

V.   **Analysis**

   a. **The fact that the ALJ found six severe impairments does not entitle Mr. Allison to a finding of disability.**

Mr. Allison argues that the ALJ found six severe impairments, "a relatively large amount [which] should've been enough to warrant a conclusion of disability." Doc. 19 at 5. Mr. Allison argues that his "conditions are severe and chronic" and then spends several pages listing "notable examples of the physical impairments." *Id*. at 5–8. Mr. Allison concludes by stating that he "had to endure the numerous impairments for several years." *Id*. at 8.[7]

The Commissioner correctly points out that Mr. Allison is not entitled to a finding of disability "simply because the ALJ found that he had six severe impairments." Doc. 21 at 5. In his reply, Mr. Allison concedes that he "is not asking the court to make a determination that a claimant with six (6) severe impairments should automatically be found to be disabled." Doc. 22 at 1. The Commissioner also points out that the ALJ "thoroughly discussed th[e] same evidence" that Mr. Allison includes in his motion. Doc. 21 at 6. The Court agrees with the Commissioner. Mr. Allison lists select highlights from the medical evidence, but does not develop any argument connected to this evidence. It is well settled that the Court will not manufacture a litigant's arguments for him, and issues raised only in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *Mays v. Colvin*, 739 F.3d 569, 575–76

---

[7] Mr. Allison also asserts that many of his impairments were "progressive in nature and thus were expected to worsen over time." Doc. 19 at 8. However, he neither cites any evidence in support of this assertion, nor does he develop any argument around this assertion.

(10th Cir. 2014); *see also Herwig v. Massanari*, 20 F. App'x 802, 805 (10th Cir. 2001) (unpublished) ("Claimant's submission of a summary of the medical evidence to the district court without accompanying argument is insufficient to raise the issue."). To prevail on appeal, Mr. Allison must either show that the ALJ's decision is not supported by substantial evidence or that the ALJ failed to apply the correct legal standards. *Maes*, 522 F.3d at 1096. Mr. Allison fails to develop either of these bases for remand in connection with this argument. Therefore, "the Commissioner's decision stands, and [Mr. Allison] is not entitled to relief." *Langley*, 373 F.3d at 1118.

### b. The ALJ did not err by failing to apply the treating physician rule.

Mr. Allison argues that the ALJ "failed to correctly apply the treating physician rule." Doc. 19 at 8. He argues that "it was an abuse of discretion that the ALJ practically ignored their opinions." *Id*. Finally, he asserts that "[t]he treating physician rule becomes very important when we analyze the claimant's mental/psychological impairments. He received continuous treatment from Hidalgo Medical Services for two (2) years." *Id*. at 10. These cursory assertions comprise Mr. Allison's entire argument and are insufficient to show error.

The treating physician rule governs how the ALJ must weigh a treating physician's "medical opinions." *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a) (effective March 27, 2017).

In the section of the ALJ's opinion discussing the opinion evidence, the ALJ found that "[a]s far as treating and examining providers, the record contains no evidence that any of his

providers are of the opinion that the claimant is unable to work or is subject to limitations greater than those set out in the RFC." AR 23. The Commissioner points out that "none of the treatment notes cited by [Mr. Allison], which he identifies as 'opinions,' actually contain any specific statements regarding [his] functional limitations or ability to work." Doc. 21 at 7–8 (citing AR 377–97, 398–415, 473–501, 530–41).[8] The Court agrees with both the ALJ and the Commissioner. Mr. Allison points to no "opinions" from treating providers that show greater limitations than the ALJ included in his RFC. As such, he provides no basis for the Court to reverse or remand. *See Duncan v. Colvin*, 608 F. App'x 566, 574 (10th Cir. 2015) (unpublished) ("Given that the ALJ did not reject the medical impairments found by [claimant's treating physician] and there were no medical opinions regarding [claimant's] work-related functional limitations, there was no opinion on such matters by [claimant's treating physician] for the ALJ to weigh."); s*ee also Bales v. Colvin*, 576 F. App'x 792, 797 (10th Cir. 2014) (unpublished) ("[Claimant] fails to explain how [the treating physician's] findings have any bearing on her functional limitations, such that the ALJ should have specifically discussed those findings in setting her RFC . . . .").

Mr. Allison fails to point the Court to any "opinion" or functional limitation by a treating provider that the ALJ failed to consider. The ALJ adequately considered and discussed Mr. Allison's treatment records, including those from his treating providers. *See* AR 18–23. As such, this argument fails.

---

[8] Mr. Allison does not reference his treatment for mental/psychological impairments in his argument about treating physician opinions. *See* Doc. 19 at 8–10. In his argument about the Listings, Mr. Allison does provide select excerpts from these records. *Id*. at 11–13. Even if the Court were to overlook Mr. Allison's failure to incorporate these excerpts into his argument about treating physician opinions, the excerpts do not "contain any specific statements regarding [his] functional limitations or ability to work," Doc. 21 at 7–8, and Mr. Allison fails to show any error on the part of the ALJ in regards to these records.

8

### c. The ALJ did not err in finding that Mr. Allison did not meet listing 12.04 for depression.

Mr. Allison argues that the ALJ erred at step three in finding that he did not meet listing 12.04 for depression. Doc. 19 at 10–13. The Commissioner argues that Mr. Allison failed to meet his burden of proof to show he met a listing. Doc. 21 at 8–12. The Court agrees with the Commissioner.

"At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude substantial gainful activity." *Drapeau v. Massanari*, 255 F.3d 1211, 1212 (10th Cir. 2001) (quotation and alteration omitted). "If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits." *Lax*, 489 F.3d at 1085 (internal quotation and citation omitted).

Each impairment in the listings is defined in terms of a list of specific medical signs, symptoms, and laboratory test results. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). A claimant has the burden at step three to establish that his or her impairment "meet[s] all of the specified medical criteria [in the listing]. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id*. To establish "that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment." *Lax*, 489 F.3d at 1085 (internal citations omitted)).

Listing 12.04 is the listing for "depressive, bipolar, and related disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (effective March 14, 2018).[9] A claimant can meet this listing

---

[9] Throughout this opinion, the Court uses the listings in effect at the time the ALJ made his decision on February 27, 2019.

9

either by showing the requirements of paragraphs A and B are met, or by showing the requirements of paragraphs A and C are met. *Id*. The requirements for each paragraph of the listing for depressive disorder are as follows:

> A. Medical documentation of the requirements of paragraph 1 . . . :
>
>> 1. Depressive disorder, characterized by five or more of the following:
>>    a. Depressed mood;
>>    b. Diminished interest in almost all activities;
>>    c. Appetite disturbance with change in weight;
>>    d. Sleep disturbance;
>>    e. Observable psychomotor agitation or retardation;
>>    f. Decreased energy;
>>    g. Feelings of guilt or worthlessness;
>>    h. Difficulty concentrating or thinking; or
>>    i. Thoughts of death or suicide.
>
>  . . .
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>> 1. Understand, remember, or apply information (see 12.00E1).
>> 2. Interact with others (see 12.00E2).
>> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>> 4. Adapt or manage oneself (see 12.00E4).
>
> OR
>
> C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

The ALJ found that Mr. Allison did not meet the requirements of listing 12.04 because he did not meet the requirements of paragraph B or paragraph C.[10]  AR 15–17.  The ALJ found that Mr. Allison did not meet the paragraph B criteria because he did not have at least two "marked" limitations or one "extreme" limitation in the four broad areas of functioning in paragraph B.  *Id*.  Instead, the ALJ found that Mr. Allison has the following levels of limitations in these four broad areas:

  (1) A moderate limitation in understanding, remember, or applying information;
  (2) A moderate limitation in interacting with others;
  (3) A mild limitation in concentrating, persisting, or maintaining pace;
  (4) A moderate limitation in adapting or managing oneself.

AR 16–17.  The ALJ supported the level of limitation he found in each of the four broad areas with substantial evidence from the record—including evidence from Mr. Allison's medical providers.  *See id*.

Mr. Allison challenges the ALJ's paragraph B analysis, claiming that "[t]he overwhelming evidence establishes that [he] has a marked limitation with respect to at least two (2) of these criteria."  Doc. 19 at 11.  He appears to challenge the ALJ's findings only in the three areas in which the ALJ concluded that he had a "moderate" limitation.  *See id*. at 11, 13.  He claims that "the medical evidence shows that [his] ability to function independently, appropriately, effectively and [on] a sustained basis is severely limited."  *Id*. at 11.  Although Mr.

---

[10] Mr. Allison argues that the ALJ found that he met the requirements of paragraph A, and that the Commissioner conceded as much, Doc. 19 at 10–11, Doc. 22 at 2.  Regardless of whether this is true, it is irrelevant.  In order to meet listing 12.04, Mr. Allison must show that he meets the requirements of paragraphs A **and** B, or paragraphs A **and** C.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04 (emphasis added).  As discussed above, the ALJ concluded that Mr. Allison did not meet the requirements of paragraph B or paragraph C; therefore unless Mr. Allison shows an error in the ALJ's paragraph B or paragraph C analysis, any claim that he meets listing 12.04 fails.  Mr. Allison does not challenge the ALJ's finding that he does not meet the paragraph C criteria.  AR 17.

11

Allison spends several pages summarizing treatment notes from his treating providers, he provides absolutely no analysis of how these treatment notes support a finding of a "marked" limitation in any of the four paragraph B areas. *See* Doc. 19 at 11–13. This lack of analysis is fatal to his argument. *See Guillar v. Comm'r, Soc. Sec. Admin.*, 19-CV-00542-KLM, 2020 WL 1026497, at *5 (D. Colo. Mar. 3, 2020) (unpublished) ("Plaintiff must show the Court that there is sufficient evidence underlying his argument such that the case should be remanded for the ALJ's consideration. Plaintiff has simply not done so here, and the Court will not manufacture support for Plaintiff's argument for him."). Mr. Allison offers no explanation of how the treatment notes he summarizes show any greater limitation in the paragraph B areas than that found by the ALJ. Indeed, he does not even indicate in which of the paragraph B areas he claims he is markedly impaired. The Court sees no obvious ways in which the treatment notes cited by Mr. Allison show any greater limitation in the paragraph B areas than that found by the ALJ. The Court therefore finds this argument to be without merit.

### d. The ALJ did not err in determining that the record contains no evidence that Mr. Allison is unable to work.

Mr. Allison argues that it is "plain error" for the ALJ to find "that there is <u>no</u> evidence that the claimant is unable to work." Doc. 19 at 13. In his reply, Mr. Allison clarifies that he is referring to this statement by the ALJ: "As far as treating and examining providers, the record contains no evidence that any of his providers are of the opinion that the claimant is unable to work or is subject to limitations greater than those set out in the RFC." Doc. 22 at 2 (quoting AR 23).

However, as discussed in section "b" above, Mr. Allison points to no **opinion** by a medical provider finding him more limited than the RFC adopted by the ALJ. The Court therefore finds no error in the ALJ's statement. While the record evidence cited by Mr. Allison

12

shows that he had pain and limitations, the ALJ adequately considered this evidence and incorporated these limitations in formulating his RFC. Mr. Allison's brief on this issue is devoid of any argument or evidence showing he was more limited than the RFC adopted by the ALJ. As such, this argument fails.

### e. The ALJ did not fail to consider Mr. Allison's impairments in combination.

Mr. Allison argues that the ALJ "failed to consider how the determinable severe impairments acted in combination." Doc. 19 at 14–15. He argues that "in the body of his decision, the ALJ never discussed a combination of [his] impairments." *Id*. at 14.

An ALJ must consider the combined effect of all the claimant's impairments, both severe and non-severe, throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523(c) (effective March 27, 2017); *Langley*, 373 F.3d at 1123. Mr. Allison fails to demonstrate any failure on the part of the ALJ to do so. The ALJ adequately considered the combination of Mr. Allison's impairments throughout the disability determination process.

At step three, the ALJ stated that he considered whether Mr. Allison had an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, and concluded that he did not. AR 15–17. In assessing Mr. Allison's RFC, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence and other evidence." AR 17. Finally, the ALJ adopted an RFC limiting Mr. Allison to a range of sedentary work with additional limitations in order to account for the limitations from the combination of his impairments. AR 17–24.

The Court's "'general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.'" *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th

Cir. 2005)).  As in *Flaherty*, "the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of [the claimant's] impairments."  *Flaherty*, 515 F.3d at 1071.  Mr. Allison once again asserts that because the ALJ found he had six severe impairments "[i]t is clear that a combination of any or all of these impairments would require a finding of disability."  Doc. 19 at 14.[11]  The Court already found this argument to be without merit.  *See* section "a" above.  Contrary to Mr. Allison's assertions, the record reflects that the ALJ considered all Mr. Allison's impairments in combination, and the Court finds no error.

### f. The ALJ did not err in determining that there were a significant number of jobs in the national economy that Mr. Allison could perform.

Mr. Allison argues that the ALJ erred at step five in finding that there were a significant number of jobs available in the national economy that he could perform.  Doc. 19 at 15–16.  He claims that the sedentary jobs the ALJ found he could perform at step five would require him to sit for up to six hours a day.  *Id*. at 16.  He cites a note by a treating provider that says he is "unable to be in one position for long" and argues that he is unable to "sit for six hours during an eight-hour workday" and is therefore unable to do the jobs cited by the ALJ at step five.  *Id*.

The RFC the ALJ assessed, however, states that Mr. Allison "should be allowed to sit or stand, alternatively, at will."  AR 17.  At the hearing, the vocational expert ("VE") testified that a "person [who] need[s] the ability to change positions sitting and standing at will" would be able to perform the sedentary jobs of document specialist, call out operator, and surveillance system

---

[11] Mr. Allison also asserts that, contrary to the ALJ's findings, his "statement[s] concerning the intensity, persistence, and limiting effects of his symptoms are entirely consistent with the medical evidence and other evidence described in arguments 1 and 2 above."  Doc. 19 at 15.  However, he neither explains what symptoms are consistent with which medical evidence, nor points to any specific error by the ALJ.  It is well settled that the Court will not manufacture a litigant's arguments for him, and issues raised only in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  *Mays*, 739 F.3d at 575–76.

monitor.  AR 74–75.  The VE testified that the sit-stand option was not addressed by the Dictionary of Occupational Titles ("DOT"), but based on his "education and experience" these jobs would allow a person to sit or stand at will.  AR 78–79.

"Evidence from VEs . . . can include information not listed in the DOT."  SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).  "A VE . . . may be able to provide more specific information about jobs or occupations than the DOT."  *Id*. at *3.  "Providing this type of professional, experience-based evidence is precisely what reliance on evidence from a VE is meant to accomplish.  The whole point of vocational testimony is to go beyond facts already established through publications eligible for judicial or administrative notice and provide an alternative avenue of proof."  *Rogers v. Astrue*, 312 F. App'x. 138, 142 (10th Cir. 2009) (unpublished) (citing *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993); 20 C.F.R. § 404.1566(e); SSR 00-4p at *2).

The Court acknowledges that the RFC states that Mr. Allison can "stand and/or walk for two hours in an eight-hour workday" and "sit for six hours in an eight-hour workday."  AR 17.  However, the RFC also states that Mr. Allison "should be allowed to sit or stand alternatively, at will."  *Id*.  The sit-stand option addresses the treating provider's note that Mr. Allison is "unable to be in one position for long."[12]  Mr. Allison fails to discuss the sit-stand option included in his RFC, and offers no argument that this option does not adequately accommodate his limitations.  The Court therefore finds this argument to be without merit.

---

[12] Mr. Allison reported to his treating therapist that he was "unable to be in one position for long" on August 7, 2017.  AR 587.  This subjective statement is found in a progress note, rather than in an objective assessment from a treating provider.  *Id*.

### g. The Appeals Council did not err by not providing reasoning in its denial of Mr. Allison's request for review.

Mr. Allison argues that the Appeals Council's failure to provide reasoning it its "decision" "depriv[ed him] of an important step in the appeal-review process." Doc. 19 at 16. He asserts that this "denied [his] reasonable expectations that [his] submission would be considered by the reviewing tribunal." *Id.* The Commissioner asserts that the Appeals Council is not required to provide any reasoning when it declines review. Doc. 21 at 15. The Court agrees with the Commissioner.

"The Appeals Council may deny a party's request for review or it may decide to review a case and make a decision." 20 C.F.R. §§ 404.981, 416.1481. If the Appeals Council denies a request for review, the decision of the ALJ is the final decision of the Commissioner. *Id.* The Appeals Council is not required to provide a "reasoned . . . decision on the merits" and may "deny[] a petition for review without giving reasons." *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 n.10 (2019). In this case, the Appeals Council denied Mr. Allison's request for review. AR 1. The Appeals Council did not issue a "decision" and advised Mr. Allison that the ALJ's decision was the final decision of the Commissioner in his case. *Id.* In his reply, Mr. Allison concedes that the "Appeals Council met its minimal requirements." Doc. 22 at 3. The Court finds no error in the Appeals Council's failure to give reasoning in its denial of Mr. Allison's request for review.

### VI.   Conclusion

For the reasons stated above, the Court finds that the ALJ applied the correct legal standards and his decision is supported by substantial evidence. None of Mr. Allison's arguments have merit.

IT IS THEREFORE ORDERED that Claimant's Motion to Reverse the Administrative Law Judge['s] (ALJ) Unfavorable Decision Dated February 27, 2019 as well as the Appeals Council Ruling Dated November 4, 2019:  Alternatively Motion to Remand Case Back to the Administrative Law Judge (Doc. 18) is DENIED.

IT IS FURTHER ORDERED that the Commissioner's final decision is AFFIRMED, and this case is dismissed with prejudice.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent